# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 7, 2016 Session

## JEFFREY DONALD LANDIS, SR. v. REGINA MARIE LANDIS

**Appeal from the Chancery Court for Cheatham County**
No. 15718     Suzanne Lockert-Mash, Chancellor
_____

**No. M2015-02520-COA-R3-CV – Filed October 27, 2016**
_____

In this post-divorce proceeding, ex-husband filed a petition for civil contempt to compel ex-wife to allow him to retrieve certain items of personal property awarded to him in the parties' marital dissolution agreement. The trial court entered an order holding ex-wife in civil contempt for her failure to turn over certain items. We have reviewed the record and have determined that the trial court erred in finding ex-husband was entitled to a boat trailer that was not enumerated in the property list; however, we affirm the trial court's finding of civil contempt.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part and Affirmed in Part**

ANDY D. BENNETT, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Irene R. Haude, Nashville, Tennessee, for the appellant, Regina Marie Landis.

Terrance E. McNabb, Pleasant View, Tennessee, for the appellee, Jeffrey Donald Landis, Sr.

## OPINION

Regina Landis and Jeffrey Landis were divorced by final decree entered November 10, 2014. A marital dissolution agreement ("MDA") incorporated into the final decree of divorce awarded certain household furniture and other personal property to Mr. Landis. The MDA lists the following thirty-five items for Ms. Landis to return to Mr. Landis:

1.     Skil table saw

2. Lincoln mig welder
3. Dewalt drywall gun
4. Black & Decker jigsaw
5. Yellow transmission jack
6. Ladders (1 – 4 foot; 1 – 8 foot; 1 – 12 foot stepladder)
7. Ladders extension (1 – 12 foot; 1 – 24 foot)
8. 4 saw horses
9. All plastic tool holders
10. Framing square, speed square and drywall square
11. Siding tools
12. 3 – east wing hammers
13. Roofing yard magnet
14. All plumbing tools in basement of house
15. Metal shop with vise
16. Vise on metal stand
17. All business related inventory (filters, oil, lubricants, etc.)
18. Plywood at back of shop
19. Scrap metal at shop
20. All die cast collectibles (CAT equipment, fire and police cars, etc.)
21. Black Winchester gun safe
22. All law enforcement/mechanic manuals and publications
23. All law enforcement equipment (holsters, gear, cleaning equipment, etc.)
24. Coffee tables which must be returned to Fred and Pat Biggs
25. 17– ½ foot Hydrasport boat with motor and cracked hull
26. Post hole digger and boom pole
27. Tommy Hilfiger gray pea coat, all BDU's and sheriff's office polos, jeans, if any remaining
28. All business records, so as to be accountable to the government
29. Copy of all family videos and photos taken throughout the entire marriage[]
30. Charlie's 2-body armors, military surplus equipment
31. Keys and title to the Ford F-150 truck
32. His parents' antique desk and chair
33. Parts cleaner vat and cleaning solutions
34. Rolling steps
35. Two bullet levels

The MDA states the following regarding the procedure by which Mr. Landis was to retrieve the items:

Mrs. Landis shall allow Mr. Landis to retrieve these items of personal property

from the former marital residence on December 7, 2014 at 10 a.m. Mr. Landis shall bring one (1) person with him to assist him in retrieving these items. Neither party shall have any family members or friends present while Mr. Landis retrieves these items. Mrs. Landis acknowledges that these items belong to Mr. Landis and are awarded to him and to the best of her knowledge are still located at the former marital residence. She affirms that she has not sold, given away, or otherwise disposed of any of these items.

In a separate paragraph, the MDA awarded an "Overholt & Sons storage shed" to Mr. Landis and required Mr. Landis to have it removed from the former marital property "within sixty (60) days of the approval" of the MDA by the court.

On April 10, 2015, Mr. Landis filed a Petition for Civil Contempt alleging that Ms. Landis was in willful civil contempt for refusing to allow Mr. Landis to retrieve twenty-six of the listed items of personal property and the storage shed. Mr. Landis requested attorney's fees pursuant to paragraph XV of the MDA, which states:

> In the event that either party has to petition the Court for enforcement of any of the provisions of this Agreement, then the party at fault, as determined by the Court, shall be responsible for reasonable attorney's fees, expenses and court costs in enforcement of the same.

The trial court held a hearing on Mr. Landis's petition for contempt on October 30, 2015, and heard testimony from Mr. Landis; Ms. Landis; Terry Forsythe, Ms. Landis's uncle; and Diane Pentecost, Ms. Landis's friend. The court entered an Order on December 9, 2015 finding Ms. Landis in civil contempt for her willful failure to return the following items to Mr. Landis:

One hammer
An Eastwing hammer
A gray Pea Coat
Scrap metal by the boat. (Appears to the Court to be a boat lift)
The boat and the trailer
The boat motor. The Court finds that if it was stolen, she shall reimburse him for it.
All items that are inside the boat
The TBI and FBI manuals
The eight foot step ladder
The law enforcement equipment
Any business records
Dye cast collectibles
Two bullet levels
The Overholt storage shed

The court further determined that the MDA "is clear and specific as to the personal property that was ordered to be returned to Mr. Landis" and that Ms. Landis had the ability to comply with the MDA. The court found the testimony of Ms. Landis was "not credible and basically disregards most, if not all, of her testimony." As reasoning for its credibility determination, the trial court stated:

> Specifically, she, under oath, stated that her former husband arrived at two o'clock, 2:30, or something of that nature on the date set for him to remove the items of personal property awarded to him pursuant to the terms of the Final Decree. The Court finds, however, that her own witness testified that Mr. Landis arrived around 11:00 a.m. Another contradiction that specifically bothers this Court is that when the Court asked her who called the officers to be present, she said her former husband had done so. However, her own witness testified that Ms. Landis called because she wanted the officers to oversee Mr. Landis' removal of his personal property. When asked why she did not give the boat trailer which is attached to the boat awarded to Mr. Landis to him, her response was, "well, it wasn't written in there specifically" and [he] had another boat, a boat and trailer, so she "just assumed." Then, she went and loaded the boat awarded to Mr. Landis with just about everything she could find. The Court finds these actions were being spiteful. She should have known that he would need the trailer or that he would have had to move the boat onto another trailer which would have been difficult to do, and certainly difficult with all of the stuff that she had loaded into the boat.

The court ordered Ms. Landis to pay Mr. Landis's attorney's fees in the amount of $4,577.18 in addition to the court costs. The court admonished Ms. Landis that she should "get this over with and obey the orders of this Court." The court stated that, "if this matter comes back before the Court because the parties cannot agree and the Court finds Ms. Landis'[s] testimony not credible or that she has further attempted to defy the Orders of this Court, this Court will put her in jail." Ms. Landis appeals, asserting that the trial court erred in finding her in contempt and in awarding Mr. Landis his attorney's fees.

STANDARD OF REVIEW

We review findings of fact by a trial court de novo upon the record, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d). When reviewing a trial court's findings of civil contempt, "the factual issues of whether a party violated an order and whether a particular violation was willful, are reviewed de novo, with a presumption of correctness afforded the trial court's findings." *Lovlace v. Copley*, 418 S.W.3d 1, 17 (Tenn. 2013) (citing *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 356-57 (Tenn. 2008)). "A trial court's decision to hold a

- 4 -

person in civil contempt is reviewed using the abuse of discretion standard." *Id.* (citing *Konvalinka*, 249 S.W.3d at 358); *see also Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993).

ANALYSIS

"An act of contempt is a wilful[1] or intentional act that offends the court and its administration of justice." *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000) (citing Tenn. Code Ann. § 29-9-102). "Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of rights." *Wilkinson v. Wilkinson*, No. W2012-00509-COA-R3-CV, 2013 WL 614708, at *5 (Tenn. Ct. App. Feb. 19, 2013). Civil contempt is remedial in nature and is intended to benefit a litigant rather than to vindicate the court's authority. *Cremeens v. Cremeens*, No. M2014-01186-COA-R3-CV, 2015 WL 4511921, at *7 (Tenn. Ct. App. July 24, 2015). To prove a claim of civil contempt based upon an alleged disobedience of a court order, four essential elements must be established:

> (1) the order alleged to have been violated must be "lawful"; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and (4) the violation of the order must have been "willful."

*Lovlace*, 418 S.W.3d at 34 (citing *Konvalinka*, 249 S.W.3d at 354-55).

Neither party disputes that the trial court's order was lawful. Ms. Landis contends, however, that the MDA does not clearly, specifically, and unambiguously award the boat trailer to Mr. Landis, and that the trial court abused its discretion in finding that that she "willfully" violated the MDA. She also asserts the trial court erred in awarding Mr. Landis his attorney's fees. We will address her contentions in turn.

A. Boat Trailer

The trial court held Ms. Landis in contempt for failing to give Mr. Landis the boat trailer which was attached to item number twenty-five, the "17– ½ foot Hydrasport boat with motor and cracked hull." As reasoning for this determination, the trial court stated:

---

[1] As this Court has recently pointed out, "'Willful is the preferred spelling in [American English].'" *Burris v. Burris*, No. M2015-01969-COA-R3-CV, 2016 WL 5266550, at *3, n.4 (Tenn. Ct. App. Sept. 20, 2016) (quoting Bryan Garner, GARNER'S DICTIONARY OF LEGAL USAGE 948 (3d ed. 2011)). "[T]he spelling 'wilful' is preferred in British English." *Id.* We will use the spelling "willful" throughout the Opinion.

When asked why she did not give the boat trailer which is attached to the boat awarded to Mr. Landis to him, her response was, "well, it wasn't written in there specifically" and [he] had another boat, a boat and trailer, so she "just assumed." Then, she went and loaded the boat awarded to Mr. Landis with just about everything she could find. The Court finds these actions were being spiteful. She should have known that he would need the trailer or that he would have had to move the boat onto another trailer which would have been difficult to do, and certainly difficult with all of the stuff that she had loaded into the boat.

When questioned about the trailer, Mr. Landis testified:

Q. Were you awarded the trailer?
A. I would think. The trailer went with the boat. You can't pull it around on the ground by itself.
Q. Where does it say on your Final Decree that you were awarded the trailer? 17 and a half foot hydrosport boat with motor and cracked hull, correct?
A. I couldn't carry it because it was destroyed.
Q. Okay. You were ordered to go and get your stuff on that day and you didn't take it, correct?
A. I couldn't take it.
Q. Did you not come prepared to take your boat?
A. Yes, I did.
Q. Yet you didn't take it?
A. I couldn't take it.
Q. Because you wanted the trailer; is that correct?
A. I was under the impression that the trailer comes with the boat. You can't just haul a boat around on your back.
Q. But again, you understand they're three different; a boat, motor, and trailer are three different items?
A. I understand.

To resolve this issue, we must interpret the MDA and determine whether the trial court erred in finding that Ms. Landis was required to turn the boat trailer over to Mr. Landis. An MDA is a contract and is subject to the rules governing construction of contracts. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001). After reviewing the MDA in its totality, we conclude that the doctrine *expressio unius est exclusio alterius* is applicable in this case. "Literally translated, the phrase, *expressio unius est exclusio alterius*, means: the expression of one thing is the exclusion of another (of the same kind). Whilst the rule is more frequently applied to the construction of statutes and wills, it equally is applicable to other instruments of writing." *City of Knoxville v. Brown*, 260 S.W.2d 264, 268 (Tenn.

- 6 -

1953). The parties were painstakingly specific when they enumerated the items Mr. Landis was entitled to retrieve. In fact, Mr. Landis testified that it was his "intent that we be very specific" as to what was awarded to him. Absent from the exhaustive list of items listed in the MDA is a boat trailer. Applying the maxim *expressio unius est exclusion alterius* to this case provides further support for Ms. Landis's interpretation that the parties intended the list to be fully comprehensive of the items Mr. Landis was to receive in the property distribution.

When making a finding of contempt based on an alleged violation of the MDA, the trial court was required to resolve and interpret any ambiguities in favor of Ms. Landis. *See Konvalinka*, 249 S.W.3d at 356 ("Ambiguities in an order alleged to have been violated should be interpreted in favor of the person facing the contempt charge."). The boat trailer was not listed as an item awarded to Mr. Landis, and we find that the trial court erred in finding that the MDA required Ms. Landis to return the boat trailer to Mr. Landis. Therefore, we conclude the court erred in holding Ms. Landis in contempt for refusing to return it.

B. Willfulness

Ms. Landis next contends that the trial court erred in finding her in contempt because she was unable to comply with the MDA at the time of the hearing. Before finding a party in civil contempt, a court must make a threshold finding that the party violating the order engaged in willful conduct. *Ahern*, 15 S.W.3d at 79; *Haynes v. Haynes*, 904 S.W.2d 118, 120 (Tenn. Ct. App. 1995). "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Cisneros v. Cisneros*, No. M2013-00213-COA-R3-CV, 2015 WL 7720274, at *10 (Tenn. Ct. App. Nov. 25, 2015). Thus, "[h]olding an individual in contempt is an available remedy 'only when the individual has the ability to comply with the order at the time of the contempt hearing.'" *Moore v. Moore*, No. M2004-00394-COA-R3-CV, 2007 WL 2456694, at *3 (Tenn. Ct. App. Aug. 29, 2007) (quoting *Ahern*, 15 S.W.3d at 79).

As an initial matter, we note that the trial court made a specific finding that Ms. Landis was "totally not credible." The court went on to state that it "basically disregards most, if not all, of her testimony" and "does not believe anything that she said on the stand." It is a fundamental principle of appellate review that "trial courts are best situated to determine the credibility of the witnesses and to resolve factual disputes hinging on credibility determinations." *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998). As such, this Court declines to second-guess a trial court's credibility determination. *Id.*

Ms. Landis testified that she removed Mr. Landis's items of personal property from the former marital residence, his work shed, and an outbuilding and put everything she could find from the list in the yard or in the hydrosport boat for him to retrieve. When asked about specific items that were not made available to Mr. Landis at the property exchange, she testified either that she did not know what happened to them or denied that she was in

possession of the items. She also testified that she prevented Mr. Landis from going into the shop or the outbuilding to make sure he had all of his belongings. However, Ms. Landis went on to confirm that neither the Final Decree nor the MDA had any provisions that precluded Mr. Landis from entering the shop or outbuilding.

Mr. Landis testified that he was not able to retrieve all of the items listed in the MDA on the date of the property exchange. He specifically testified that Ms. Landis did not "allow" him to obtain the shed. Most of the testimony regarding specific missing items pitted the parties against each other in a "he said, she said" scenario. The trial court is in the best position to make a credibility determination in these situations, and we give the court's finding that Ms. Landis was not believable great weight.

After thoroughly reviewing the record, we are unable to conclude that the trial court abused its discretion in finding Ms. Landis in willful civil contempt. It is undisputed that she denied Mr. Landis access to certain areas of the property and piled his belongings haphazardly atop the boat and in the yard. We agree with the trial court that, "the best solution would be for him to have gone in the house and gotten his items by pointing out to her what was awarded to him and where such was located inside the house or the detached workshop." Accordingly, we affirm the trial court's order finding Ms. Landis in civil contempt for her failure to allow Mr. Landis to retrieve the items awarded to him in the MDA.[2]

CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment finding Ms. Landis in contempt for her failure to turn over the boat trailer to Mr. Landis and affirm the trial court's judgment holding Ms. Landis in willful civil contempt for her failure to return the remainder of Mr. Landis's personal property. Costs of this appeal are assessed against the parties equally, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[2] In her brief, Ms. Landis requests the trial court's award of attorney's fees be reversed if "this [C]ourt finds that the ex-wife is not at fault." Because we have affirmed the trial court's finding of civil contempt, we decline to reverse the trial court's award of attorney's fees. Likewise, Ms. Landis is not entitled to her attorney's fees on appeal.